UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **Marcos Ramos et al.,**<br><br>           Plaintiffs,<br><br>v.<br><br>**Amazon.com, Inc., et al.,**<br><br>           Defendants. | Case No. 2:24-cv-00089-HDV-E<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO REMAND [DKT. NO. 39] AND DENYING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 32]** |

## I. INTRODUCTION

Plaintiffs Marcos Ramos, Sahara Antrim, Eldaa Soto, Marissa Barriga, Esme Nicolson-Singh, and Barbara Trevino ("Plaintiffs") bring this action on behalf of a putative class against Defendants Amazon.com, Inc., Amazon.com International, Inc., Amazon.Com LLC, Amazon.com Services LLC, Amazon.com Services, Inc., Audible, Inc., and Alexa Internet (collectively, "Amazon") for alleged violations of California Civil Code Section 1670.8—commonly known as California's "Yelp Law." Specifically, Plaintiffs allege that Amazon's "Conditions of Use" run afoul of the Yelp Law by prohibiting a wide range of protected speech, including anything that "disparages or discredits Amazon."

Before the Court are two motions that were heard together: Plaintiffs' Motion to Remand ("Remand Motion") and Amazon's Motion to Dismiss ("MTD"). Plaintiffs' Remand Motion asserts that subject matter jurisdiction is lacking because the Consolidated Complaint does not allege any "injuries in fact" sufficient to support Article III standing. Amazon's MTD presents various arguments, but in the main argues that the claims fail as a matter of law because the plain language of the Conditions of Use only covers unobjectionable trademark-related provisions. For the reasons discussed below, the Court denies both motions.

In the First Amendment context, credible threats of enforcement activity that arguably chill protected speech can constitute injury for standing purposes. *See Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1171 (9th Cir. 2018). Accepting the allegations in the Consolidated Complaint as true for purposes of this motion, that standard is satisfied here. *See* Consolidate Complaint ¶ 4 ("threats of enforcement" by Amazon "are alleged to have been made in this case."). Moreover, although Plaintiffs now seek to disavow their own pleading, the Consolidated Complaint includes numerous references to compensatory damages that amply support this Court's jurisdiction under the Class Action Fairness Act.

For the reasons discussed below, Amazon's Motion is denied because the challenged language of the Conditions of Use is ambiguous. Both parties' interpretation of the text is plausible and cannot be adjudicated at this stage of the litigation as a matter of law.

## II. BACKGROUND

On November 22, 2023, Plaintiffs filed a putative class action in state court alleging that Defendant Amazon's Conditions of Use violate California Civil Code § 1670.8 and California Business and Professions Code § 17200 *et seq*. Notice of Removal, Ex. A ("State Court Complaint") at 1 [Dkt. No. 1-1]. On January 5, 2024, Amazon removed the case to federal court. Notice of Removal [Dkt. No. 1].

On March 4, 2024, Plaintiffs filed a Motion to Consolidate Cases seeking to consolidate two related actions before the Court: *Ramos, et al. v. Amazon.com, Inc., et al.*, No. 2:24-cv-00089, and *Trevino, et al., v. Amazon.com, Inc., et al.*, No. 2:24-cv-00240 [Dkt. No. 23]. The Court granted the motion and consolidated the two cases [Dkt. No. 29].

On May 16, 2024, Plaintiffs filed a Consolidated Class Action Complaint on behalf of a putative class ("Consolidated Complaint") [Dkt. No. 30]. Amazon filed a Motion to Dismiss Plaintiff's Consolidated Complaint on June 17, 2024 [Dkt. No. 32]. Plaintiffs filed a Motion to Remand on July 9, 2024 [Dkt. No. 39]. The Court held oral arguments on both motions on September 12, 2024, and took them under submission [Dkt. No. 49].

## III. MOTION TO REMAND

### A. Legal Standard

Article III of the Constitution circumscribes the power of the federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. A prerequisite for a case or controversy is that the plaintiff must have a personal stake in the action, better known as standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). While Congress may have expanded access to the federal courts in class actions removed under the Class Action Fairness Act ("CAFA"), *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 882 (9th Cir. 2013), Article III standing remains a necessity. *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016).

A plaintiff has standing if it can allege "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *California v. Texas*, 593 U.S. 659, 668–69 (2021). Essentially, standing requires: (1) an "injury in fact"—*i.e.*, an injury that is "concrete, particularized, and actual or imminent"; (2) traceability—*i.e.*, "that the injury was

1   likely caused by the defendant"; and (3) redressability—*i.e.*, "that the injury would likely be
2   redressed by judicial relief." *TransUnion*, 594 U.S. at 423 (citing *Lujan v. Defenders of Wildlife*,
3   504 U.S. 555, 560–61 (1992)).  An "injury in fact" must be real and concrete, not abstract. *Id.* at
4   424.  The classic "concrete" injuries are tangible harms, such as physical or monetary injuries, but a
5   plethora of intangible harms can also be considered concrete for standing purposes. *Id.* at 424–425.
6   "Chief among them are injuries with a close relationship to harms traditionally recognized as
7   providing a basis for lawsuits in American courts," like "harms specified by the Constitution itself."
8   *Id.* at 425.  That includes the harm from an abridgment of free speech in contravention of the First
9   Amendment.  *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460 (2009).
10         First Amendment challenges bring with them "unique standing considerations because of the
11  chilling effect of sweeping restrictions on speech." *Porter v. Martinez*, 68 F.4th 429, 437 (9th Cir.
12  2023) (citation omitted).  In the context of a pre-enforcement challenge, a plaintiff must demonstrate
13  a "realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."
14  *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010).  In determining whether a plaintiff faces a
15  realistic danger of harm, courts ask whether a plaintiff intends to engage in conduct arguably
16  implicating the First Amendment interest, and if so, whether there is a credible threat that the
17  challenged provision will be used against the plaintiff. *Italian Colors Rest. v. Becerra*, 878 F.3d
18  1165, 1171 (9th Cir. 2018).  The inquiry "tilt[s] dramatically toward a finding of standing" and
19  "chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury."
20  *Tingley v. Ferguson*, 47 F.4th 1055, 1066–67 (9th Cir. 2022).
21         **B.     Discussion**
22         Plaintiffs argue that the present case must be remanded due to lack of subject matter
23  jurisdiction. Remand Motion at 3–4. They contend that this action does not meet the "injury in fact"
24  requirement because Amazon has not actually threatened to enforce the COU against Plaintiffs. *Id.*
25  at 5–7. Without an imminent threat of enforcement, Plaintiffs maintain that any harm is only
26  "conjectural or hypothetical," insufficient to satisfy Article III. *Id.* at 5 (citing *Lopez v. Candaele*,
27  630 F.3d 775, 785 (9th Cir. 1992)).
28         The Consolidated Complaint says otherwise. Plaintiffs specifically allege—as a central

4

theory in their lawsuit—that Amazon has attempted to prevent its customers from criticizing or making statements about the company using words or referencing products like "Alexa," "Amazon Prime," "Kindle," and "Whole Foods." Consolidated Complaint ¶ 6 ("In doing so, Amazon seeks to silence its customers from criticizing or making any statement about Amazon using any one of hundreds of words, logos, or phrases . . . . This chilling activity is the precise conduct prohibited by [the Yelp Law]"). That chilling effect "is, itself, a constitutionally sufficient injury." *Tingley*, 47 F.4th at 1066–67. Moreover, Plaintiffs aver that there were actual threats of enforcement against them by Amazon. Consolidated Complaint ¶ 4 ("threats of enforcement, **although such threats are alleged to have been made in this case**, are not a necessary element.") (emphasis added).

That is enough to confer standing. The Court finds that the Consolidated Complaint has clearly pled a "realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Lopez*, 630 F.3d at 785.[1]

### IV. MOTION TO DISMISS

#### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek to dismiss a complaint for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

---

[1] In addition, the Consolidated Complaint does—in several places—seek compensatory damages for alleged economic harm. *Id.* ¶ 53 ("Injuries sustained by Plaintiffs and Class members flow, in each instance, from a common nucleus of operative facts as set forth above."), ¶ 63 ("Defendants' conduct has caused Plaintiffs and Class members to suffer harm.") In the briefing and oral argument, Plaintiffs attempt to walk back these allegations. *See e.g.*, Plaintiff's Reply in Support of Remand Motion ("Plaintiff's Reply") at 8 ("Without an allegation of imminent threat of enforcement—or even any statement or intended future statement that could draw a threat of enforcement—Defendants have no basis to argue that the pleadings state an injury in fact.") [Dkt. No. 43]. Plaintiffs now maintain that this language was a vestige from a prior complaint and should be disregarded. Plaintiffs' Reply in Support of Remand Motion ("Remand Motion Reply") at 4. But the Consolidated Complaint controls, and the Court must accept these allegations as true.

U.S. at 678.  A properly pled complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

### B.  Discussion

#### 1.  California's Yelp Law, Cal. Civ. Code § 1670.8

Contract interpretation is ordinarily a matter of state law.  *DirectTV, Inc. v. Imburgia*, 577 U.S. 47, 468 (2015).  "The fundamental goal of contract interpretation [in California] is to give effect to the mutual intent of the parties as it existed at the time of contracting," which should be "inferred, if possible, solely from the written provisions of the contract," assuming the language is "clear and explicit, and does not involve an absurdity."  *Schertzer v. Bank of America*, 109 F.4th 1200, 1208 (9th Cir. 2024) (citations omitted).  To fulfill that directive, courts will look to (a) the ordinary and popular meaning of the terms; (b) give effect to surrounding provisions to avoid superfluity; (c) the contract as a whole; and (d) avoid an absurd or inequitable result.  *Id.*  "In cases of uncertainty not removed by [canons of contract interpretation], the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."  *Int'l Bhd. of Teamsters, Local 396 v. NASA Servs.*, 957 F.3d 1038, 1042 (9th Cir. 2020) (citing *Penthouse Int'l, Ltd. v. Barnes*, 792 F.2d 943, 948 (9th Cir. 1986)); *see also* Cal. Civ. Code § 1654.

The challenged language of the Conditions of Use is—at least on its face—arguably a violation of the Yelp Law.[2]  California's Yelp Law prohibits contracts that "waiv[e] the consumer's right to make *any statement* regarding the seller or lessor or its employees or agents, or concerning the goods or services."  Cal. Civ. Code. § 1670.8(a)(1) (emphasis added).  Here, the Conditions of Use state, in relevant part, "Amazon's trademarks and trade dress may not be used…in any manner that disparages or discredits Amazon."  Motion at 6; Consolidated Complaint ¶ 29.  Thus, by assenting to the website's Conditions of Use, users are ostensibly required to waive their rights to make certain negative statements regarding Amazon concerning its goods or services.

Amazon characterizes Plaintiffs' contractual interpretation as "cherry-pick[ing]" eight words

---

[2] To be clear, the Court at this stage of the litigation is ***not*** making an affirmative finding that this is the proper interpretation of this provision.  Rather, the Court's point here is that the Plaintiffs' interpretation is not unreasonable and is arguably consistent with the plain meaning of the text.

out of context from the "Trademarks" section of the Conditions of Use. MTD at 7. But while the interpretation of a contract in its totality can certainly include analysis of where the challenged language resides in the whole of the text and may include a functional analysis of the role of titles and headings in providing greater explanatory detail and context, the mere fact that the relevant language is found in the "Trademarks" section is not dispositive. *See People v. Fuentes*, 78 Cal. App. 5th 670, 678 (2022) ("However, title or chapter headings are unofficial and do not alter the explicit scope, meaning, or intent of a statute.") (citation omitted); *People v. Garfield*, 40 Cal. 3d 192, 200 (1985) ("The provisions found within the body of the act are not restricted in operation by the statement in the heading."); *Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 528–529 (1947) ("Factors of this type have led to a wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text…[t]hey are but tools available for the resolution of doubt. But they cannot undo or limit that which the text makes plain.") (citation omitted).

Amazon also avers that Plaintiffs' claims and fears are rebutted by the Customer Reviews section of the website, which "permits customers to 'post reviews, comments, photos, videos and other content' ["both favorable and unfavorable"] about Amazon or its products and services…." *Id.* at 10–11; Goldmark Decl. Ex 1., at 2. Putting aside the obvious rejoinder that the challenged language at issue is not found under Customer Reviews, allowing "favorable and unfavorable" reviews of products and services is not the same as allowing statements that "disparage or discredit" the company in general. If it were, the sections would be contradictory. In any case, the Yelp Law prohibits a waiver of "*any statement*", not merely negative reviews of products or services.

Amazon's alternative contractual argument—that the language at issue "merely incorporates standard trademark protections", MTD at 11—fares no better, as a promise not to engage in conduct already prohibited by law is mere surplusage since it cannot provide any consideration for the parties' performance. *Cf. Floor Seal Technology, Inc. v. Sinak Corp.*, 156 Fed.Appx. 903, 904 (9th Cir. 2005) ("Under Cal. Civ. Code §§ 1607, 1667, a promise to refrain from unlawful conduct is unlawful consideration."); *Shafer v. Williams*, 15 Cal. App. 4th 1243, 1247 (1993) ("In other words, the law finds repugnant the coercion inherent in a promise which carries the implied threat that,

without acquiescence in the return promise exacted, the wrongful conduct will continue.").

In the final analysis, the Court is left with two competing interpretations of the Conditions of Use. Neither interpretation is absurd, and both interpretations have support in the text of the relevant provisions. Therefore, at this point, the Court must conclude that the terms of the Conditions of Use are ambiguous and will require further exegesis by reference to external evidence, custom and usage, and other interpretive techniques not suitable for determination as a matter of law on a Rule 12 motion.[3] *CITGO Asphalt Refining Company v. Frescati Shipping Company, Ltd.*, 589 U.S. 348, 355 (2020) ("[W]hen a written contract is ambiguous, its meaning is a question of fact, requiring a determination of the intent of the parties in entering the contract; that may involve examining relevant extrinsic evidence of the parties' intent and the meaning of the words that they used.").

### 2. Communications Decency Act ("CDA"), 47 U.S.C. § 230

Section 230(c)(1) of the CDA grants immunity for "(1) a provider . . . of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Dryoff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019). Amazon contends that as an interactive computer service it is completely immune from liability for these claims because its decisions to publish or remove any negative third-party comments on its website fall within the ambit of Section 230(c)(1).

The Court disagrees. Putting aside that Plaintiffs do not "seek to treat" Amazon "as a publisher or speaker," the challenged language in the Conditions of Use is simply too broad for complete Section 230 protection—assuming applicability—for the simple reason that the blanket prohibition on statements that "disparage or discredit" is *not limited* to statements posted on Amazon's website. Indeed, the prohibition could by its own terms extend to discrediting statements

---

[3] Amazon's argument that it falls within the Yelp Law's exception also fails. MTD at 15. The exceptions states "[t]his section shall not be construed to prohibit or limit a . . . business that hosts online consumer reviews or comments from *removing* a statement that is otherwise lawful to remove." Cal. Civ. Code. § 1670.8(e) (emphasis added). Removing a statement as a form of content moderation is allowed. But, at least under Plaintiffs' interpretation, the terms of the Conditions of Use affirmatively preclude customers from protected speech. That is not what the exception allows.

made by Amazon users on third party websites. To give one example arguably covered by the Consolidated Complaint, consider a disgruntled Amazon shopper who uploads a negative post on Instagram disparaging the speed of Amazon's delivery or the sufficiency of its return policies. The shopper in this hypothetical scenario would have "used any Service" as that phrase is used in the Amazon Conditions of Use, and thus be potentially covered under the challenged language if their post includes Amazon's name or logo "in [a] manner that disparages or discredits Amazon." But there would be no legal basis for Section 230 to immunize Amazon for censoring posts made outside its online ecosystem. In summary, notwithstanding any protection from liability Section 230 may give Amazon for making editorial decisions relating to information on its *own* website, Section 230 does not preclude the entire claim.

### 3. First Amendment

Amazon's invocation of the First Amendment is equally inapposite. The First Amendment protects publishers in exercising their editorial judgment. Government action (here in the form of California's Yelp Law) forcing a publisher to carry content it otherwise prefers to exclude could potentially violate the First Amendment rights of the publisher. *See generally Moody v. NetChoice, LLC*, 144 S. Ct. 2383 (2024). But the First Amendment rights of Amazon are not implicated by a law that prohibits a commercial entity from contractually limiting the speech of its customers in third-party sites.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is **denied** and Defendant's Motion to Dismiss is **denied**.

Dated:   November 25, 2024

_____
Hernán D. Vera
United States District Judge