UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARCOS RAMOS et al.,

                Plaintiffs,

        v.

AMAZON.COM, INC., et al.,

                Defendants.

Case No. 2:24-cv-00089-HDV-Ex

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO REMAND OR STAY [106]**

## I.    INTRODUCTION

Defendants Amazon.com, Inc., Amazon.com International, Inc., Amazon.com LLC, Amazon.com Services LLC, Amazon.com Services, Inc., Audible, Inc., and Alexa Internet (collectively, "Amazon") move to remand this action for lack of Article III standing or, alternatively, to stay it pending guidance from the California Court of Appeal on a question of state law that could potentially supply the rule of decision for the claim advanced by Plaintiffs Marcos Ramos, Sahara Antrim, Marissa Barriga, Esme Nicolson-Singh, and Eldaa Soto.  *See* Amazon's Motion to Remand or Stay ("Motion") at 8–10 [Dkt. 106].

The standing question is close and contested—closer than Amazon suggests, and more contested than Plaintiffs acknowledge.  Federal courts routinely resolve difficult jurisdictional issues, but the uncertainty attending each side's arguments counsels caution in resolving the issue.  Much of that uncertainty traces to the antecedent state-law question that besets Plaintiffs' claim, one that California's appellate courts are actively considering and expected to resolve in the near term.

That question is whether California Civil Code section 1670.8(a)(1) authorizes a private right of action absent enforcement or threatened enforcement under section 1670.8(a)(2).  The California Court of Appeal is poised to answer that question in a suite of related appeals, all brought by Plaintiffs' counsel, all advancing claims under the same statute, and all challenging the same kind of contractual provision that founds Plaintiffs' claim here.[1]  The Court of Appeal's answer will likely determine whether Plaintiffs have a viable claim at all.

Before the parties and the Court expend further resources litigating and adjudicating the claim of a putative class of millions of consumers under a statute whose contours the Court of Appeal is expected to define imminently, the orderly course of justice favors a brief pause.  To that end, the Court grants Amazon's motion to stay and denies Amazon's motion to remand without prejudice to renewal.

---

[1] *See Scott v. Ulta Beauty, Inc.*, No. B345741 (Cal. Ct. App.) (fully briefed); *Moss v. GoDaddy.com, LLC*, No. B346188 (Cal. Ct. App.) (fully briefed); *Arterberry v. Peet's Coffee, Inc.*, No. B344295 (Cal. Ct. App.) (reply brief due April 22, 2026); *Anderson v. United Parcel Serv. of Am.*, No. B350215 (Cal. Ct. App.) (response brief due June 22, 2026); *Khosrovian v. Home Depot, Inc.*, No. B349592 (Cal. Ct. App) (opening brief due June 8, 2026).

## II.   BACKGROUND

### A.   Factual Background

Amazon operates various online platforms, including Amazon.com, through which consumers purchase goods and services.  Consolidated Class Action Complaint ("CAC") ¶ 26 [Dkt. 30].  To complete a transaction on Amazon's platforms, a consumer must click a button indicating their agreement to Amazon's Conditions of Use ("COU"), which appear by reference at checkout.  Declaration of Scott Larson ("Larson Decl.") ¶ 4 [Dkt. 108-26]; *see* First Declaration of Christopher E. Stiner ("First Stiner Decl.") Ex. C [Dkt. 95-5].  Consumers have no opportunity to negotiate or opt out of any term in the COU.  Plaintiffs' Motion for Class Certification ("Class Motion") at 13 [Dkt. 95-1] (citing First Stiner Decl. Ex. K, at 12, 17, 19 [Dkt. 95-13]).

At the inception of this litigation, the COU included a section titled "Trademarks," which stated in pertinent part that Amazon's trademarks and trade dress may not be used "in any manner that disparages or discredits Amazon" (the "non-disparagement clause").  Larson Decl. Ex. 24, at 2–3 [Dkt. 108-27].  That non-disparagement clause is the basis of Plaintiffs' claim.[2]  *See* CAC ¶¶ 6, 29, 59–63.  Amazon subsequently removed the clause from its COU on May 29, 2025.  Class Motion at 8; Larson Decl. ¶¶ 5–6, 9; *id.* Ex. 25, at 2–3 [Dkt. 108-28].

The COU also includes a section titled "Your Account," which reserves to Amazon discretion to "refuse service, terminate accounts, terminate [a user's] rights to use Amazon Services, remove or edit content, or cancel orders in its sole discretion."  First Stiner Decl. Ex. F, at 3–4 [Dkt. 95-8].  Plaintiffs characterize this provision as a contractually-embedded mechanism of threatened enforcement, alleging that Amazon "threaten[s]" to "terminate a user's right to access and

---

[2] Plaintiffs stake their claim on the non-disparagement clause in Amazon's COU.  CAC ¶¶ 6, 29, 59–63; Joint Rule 26(f) Report at 2 [Dkt. 53].  For the first time in their Class Motion, however, Plaintiffs expand their claim to encompass various additional provisions in Amazon's COU and Community Guidelines.  *See* Class Motion at 14–15.  The Court need not determine at this time whether those additional provisions are properly part of Plaintiffs' claim.  They are immaterial to the Court's present analysis because Plaintiffs do not meaningfully argue that the additional provisions they identify bear on Amazon's request for a stay.  *See John-Charles v. California*, 646 F.3d 1243, 1247 n.4 (9th Cir. 2011) (finding that party "failed to develop any argument on this front, and thus has waived it"); *see also United States v. George*, 291 F. App'x 803, 805 (9th Cir. 2008) (holding that party's "failure to adequately develop . . . arguments in his brief operates as a waiver").  In any case, a stay is warranted regardless of which COU provisions are invoked.

use [Amazon's] [p]latforms if they do not comply with the [COU]."  CAC ¶ 6; Plaintiffs' Opposition to Amazon's Motion ("Opposition") at 22–23 [Dkt. 111].

In short, Plaintiffs' claim is that Amazon violated California Civil Code section 1670.8 by inserting the non-disparagement clause in its COU.[3]  CAC ¶¶ 59–62.  Plaintiffs seek civil penalties, injunctive relief, and public injunctive relief on behalf of a putative class of California consumers who completed sales transactions on Amazon's platforms between November 23, 2022, and May 29, 2025.  CAC ¶¶ 41(f), 64; *id.* at Prayer for Relief ¶¶ e, g; Class Motion at 6, 8.

### B.    Procedural Background

This action originated in the Los Angeles County Superior Court in 2023 as two separate putative class actions.  *See* Class Action Complaint, *Trevino et al. v. Amazon.com, Inc., et al.*, No. 23STCV29540 (Cal. Super. Ct. Dec. 1, 2023); Class Action Complaint, *Ramos et al. v. Amazon.com, Inc., et al.*, No. 23STCV28733 (Cal. Super. Ct. Nov. 22, 2023).  Amazon removed both actions to federal court in January 2024, and the Court consolidated them.  *See* Amended Order Granting Motion for Consolidation of Actions [Dkt. 29].

In May 2024, Plaintiffs filed the operative CAC, asserting one cause of action under California Civil Code section 1670.8.  *See* CAC ¶¶ 56–65.  Plaintiffs promptly moved to remand, arguing that Amazon never enforced or threatened to enforce the non-disparagement clause against them and that Plaintiffs suffered no concrete Article III injury.  Plaintiffs' Motion to Remand at 8–11 [Dkt. 39].  Amazon opposed, arguing in favor of Plaintiffs' standing and the Court's jurisdiction.  *See* Amazon's Opposition to Plaintiffs' Motion to Remand at 16–20 [Dkt. 42].

In November 2024, the Court denied Plaintiffs' remand motion.  *See* Order Denying Plaintiffs' Motion to Remand and Amazon's Motion to Dismiss [Dkt. 50].  Accepting the allegations in the CAC as true, the Court found that Plaintiffs plausibly alleged a concrete and particularized

---

[3] Commonly known as the "Yelp Law," California Civil Code section 1670.8 provides that a contract for the sale or lease of consumer goods or services "may not include" any provision waiving a consumer's right to make any statement regarding the seller or lessor of goods or services.  Cal. Civ. Code § 1670.8(a)(1).  The statute also makes it unlawful "to threaten or to seek to enforce" such a provision.  *Id.* § 1670.8(a)(2)).  For any person who violates "this section," the statute authorizes a civil penalty, including an enhanced penalty for willful, intentional, or knowing violations.  *Id.* § 1670.8(c), (d).

Article III injury on two grounds: first, the non-disparagement clause plausibly created a chilling effect akin to a First Amendment speech injury, and second, Plaintiffs alleged "actual threats of enforcement" against them by Amazon. *Id.* at 4–5 (citing CAC ¶¶ 4, 6).

The parties thereafter engaged in considerable discovery. *See, e.g.*, First Stiner Decl. Exs. J–L [Dkts. 95-12 to 95-14] (written discovery); First Declaration of John A. Goldmark ("First Goldmark Decl.") Exs. A–E [Dkts. 106–2 to 106-6] (Plaintiff deposition excerpts); Second Declaration of John A. Goldmark ("Second Goldmark Decl.") Exs. 8–13 [Dkts. 108-10 to 108-15] (further Plaintiff deposition excerpts and document products); Third Declaration of John A. Goldmark ("Third Goldmark Decl.") Exs. A–C [Dkts. 115-2 to 115-4] (further Plaintiff deposition excerpts); Declaration of Christopher R. Rodriguez Ex. B [Dkt. 114-3] (Plaintiffs' expert witness deposition transcript). The window for fact discovery is set to close on April 28, 2026. Order Re Joint Stipulation to Extend Deadlines at 2 [Dkt. 80].

On January 8, 2026, Plaintiffs filed their Class Motion. *See* Class Motion. Plaintiffs ask the Court to certify a class of California residents "who completed a sales transaction on" certain Amazon platforms between November 23, 2022, and May 29, 2025. *Id.* at 8. The Class Motion frames common questions around the existence and uniformity of Amazon's challenged contract terms, and contends that common proof will establish Amazon's liability, willfulness, and the appropriate penalty amount. *Id.* at 15, 18.

Notably, Plaintiffs do not seek to certify an enforcement class.[4] *See generally* Class Motion. Their Class Motion does not identify enforcement or threatened enforcement as a common question. It does not rely on enforcement or threatened enforcement to establish typicality. And it defines the putative class without reference to any enforcement or threatened enforcement activity. *See id.* at 8. Plaintiffs stake their claim on the notion that Amazon's inclusion of certain allegedly prohibited

---

[4] At oral argument, the Court asked Plaintiffs' counsel why they did not seek to certify an enforcement class under section 1670.8(a)(2) if they maintained that Amazon enforced or threatened to enforce the non-disparagement clause against Plaintiffs. The exchange confirmed that Plaintiffs' theory of classwide liability turns exclusively on the inclusion of certain allegedly prohibited terms in the COU. That is a pure section 1670.8(a)(1) theory. Plaintiffs' choice to pursue that theory is their prerogative. But it means that the viability of their Yelp Law claim turns on whether section 1670.8(a)(1) creates a private right of action. That is the question the California Court of Appeal is positioned to answer.

terms in its COU suffices to establish liability under California Civil Code section 1670.8(a)(1).  *Id.* at 13–14; *see* CAC ¶¶ 59–63; Joint Rule 26(f) Report at 2.

On February 25, 2026, Amazon filed its Motion.  *See* Motion.  In support of remand, Amazon argues that the Ninth Circuit's decision in *Popa v. Microsoft Corporation*, 153 F.4th 784 (9th Cir. 2025), and the evidentiary record developed in fact discovery establish that Plaintiffs suffered no concrete and particularized Article III injury.  *See id.* at 8–9.  In support of a discretionary stay under *Landis v. North American Company*, 299 U.S. 248 (1936), Amazon urges the Court (in the alternative) to pause this case pending guidance from the California Court of Appeal on whether California Civil Code section 1670.8(a)(1) creates a private right of action.  *See id.* at 9–10; *see also* Amazon's Request for Judicial Notice ("RJN") [Dkt. 107].[5]

Amazon's Motion is fully briefed.  *See* Opposition; Amazon's Reply in Support of Motion ("Reply") [Dkt. 115].  As are Plaintiffs' Class Motion, Plaintiffs' Motion to Dismiss Plaintiff Eldaa Soto [Dkt. 105], and Amazon's Motion to Strike the Declaration of Greg Hallman in Support of Plaintiffs' Class Motion [Dkt. 109].  *See* Amazon's Opposition to Class Motion [Dkt. 108]; Plaintiffs' Reply in Support of Class Motion [Dkt. 113]; Amazon's Notice of Non-Opposition to Motion to Dismiss [Dkt. 110]; Plaintiffs' Reply in Support of Motion to Dismiss [Dkt. 112]; Plaintiffs' Opposition to Motion to Strike [Dkt. 114]; Amazon's Reply in Support of Motion to Strike [Dkt. 117].  The Court heard oral argument on April 2, 2026, and took the matters under submission.[6]  [Dkt. 125].

---

[5] Amazon asks the Court to take judicial notice of various state trial and appellate court documents that were filed in the related Yelp Law appeals.  *See* RJN at 2–3.  Under Federal Rule of Evidence 201, a court may take judicial notice of matters of public record, "including documents on file in federal or state courts."  *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).  The Court grants Amazon's unopposed RJN and takes judicial notice of the state court documents for their existence and to ascertain the status of the pending appellate proceedings, but not for the truth of any factual assertions contained therein.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

[6] After oral argument, Plaintiffs filed a document titled "Plaintiffs' Request for Consideration of Additional Points" [Dkt. 127], in which they advance "additional points [to] further demonstrate" their standing.  Amazon responded.  [Dkt. 128].  Neither filing will be considered.  The Court stated at oral argument that if it required additional information from the parties, it would request it.

(Continued . . .)

### III.   LEGAL STANDARD

A district court possesses inherent authority to stay proceedings in the cases before it. *Landis*, 299 U.S. at 254. "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* A court "may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). This rule applies "whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.* at 863–64 (collecting cases).

In determining the propriety of a *Landis* stay, the Ninth Circuit instructs courts to weigh three non-exclusive factors: (1) the possible damage to the nonmoving party that may result from granting a stay; (2) the hardship or inequity to the moving party if required to go forward; and (3) the orderly course of justice, measured in terms of whether a stay could be expected to simplify or complicate the issues, proof, or questions of law in a case. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). The proponent of a *Landis* stay bears the burden of showing that the circumstances justify the court's exercise of its discretion. *Clinton v. Jones*, 520 U.S. 681, 708 (1997). Where the nonmoving party shows a fair possibility of prejudice, the moving party "must make out a clear case of hardship or inequity" in being required to go forward. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (quoting *Landis*, 299 U.S. at 255).

### IV.   DISCUSSION

Amazon asks the Court to remand this case for lack of Article III standing or, alternatively, to stay it pending state-law guidance from the California Court of Appeal. A court's obligation to assure itself of its subject-matter jurisdiction is continuous. *Mashiri v. Dep't of Ed.*, 724 F.3d 1028,

---

Unsolicited supplemental briefing tendered after a matter has been taken under submission—contrary to the Court's express direction, without leave, and in contravention of Local Rule 7-10—disrupts the orderly administration of contested motions, unnecessarily burdens opposing parties, and disregards the Court's authority to manage its docket. Counsel are cautioned that any further post-submission filings of this kind will be stricken without further notice.

1031 (9th Cir. 2013).  But that obligation does not require the Court to resolve a difficult jurisdictional question today when doing so tomorrow may produce a more considered result.  *See Carino v. Campagnolo*, No. 18-cv-03426-DMG-JCx, 2018 WL 7461692, at *2 (C.D. Cal. Dec. 13, 2018) ("Where a legally difficult jurisdictional question is presented, the Court has the authority to stay the action if subsequent events will likely resolve that issue").

The prudential reasoning in *Carino* applies here.  The Court of Appeal's forthcoming construction of California Civil Code section 1670.8(a)(1) may define with much more precision the exact nature of the injury the California Legislature intended the statute to address.  And it is reasonably expected that this decision by extension will map out the contours of the claim itself and thereby clarify *who* can sue and for *what* relevant conduct—all of which is crucial to an analysis of jurisdiction.  Under these circumstances, a stay serves the interests of both prudence and economy: it insulates the parties from potentially duplicative class-action proceedings, avoids the risk of inconsistent results, and preserves the Court's ability to resolve the standing issue on a more fulsome and rigorous legal foundation.

### A.    The Related California Court of Appeal Proceedings

Before evaluating the propriety of a *Landis* stay, the Court first summarizes the relevant legal landscape.  Amazon identifies six related Yelp Law appeals that are pending before the California Court of Appeal.[7]  RJN at 2–3.  Most if not all of those appeals present the same legal question that the Court confronts in this case: whether a plaintiff may maintain a private cause of action under California Civil Code section 1670.8(a)(1) without also asserting a violation of section 1670.8(a)(2). *See, e.g.*, First Goldmark Decl. Ex. L, at 4–5 (*Scott v. Ulta Beauty, Inc.*, No. B345741 (Cal. Ct. App.)); *id.* Ex. M, at 4 (*Arterberry v. Peet's Coffee, Inc.*, No. B344295 (Cal. Ct. App.)); *id.* Ex. N, at 4 (*Moss v. GoDaddy.com, LLC*, No. B346188 (Cal. Ct. App.)).  The most procedurally advanced of those appeals, *Scott* and *Moss*, are fully briefed as of April 2026.  Opening briefs, or both opening and response briefs, have also been lodged in the remaining appeals.

---

[7] One of the six appeals was dismissed pursuant to a stipulation of dismissal by the parties.  *See O'Donnell v. Crocs Retail, LLC*, No. B350471 (Cal. Ct. App. Apr. 1, 2026).

The statutory question the Court of Appeal is set to address is directly on point.  Plaintiffs seek to certify a class based on Amazon's alleged violations of California Civil Code section 1670.8(a)(1).  Whether that statute authorizes a private right of action—and by extension, whether Plaintiffs' legal theory is viable—is what the Court of Appeal is set to decide.

The Court acknowledged the significance of that question to this case in its earlier order denying Amazon's motion for judgment on the pleadings.  *See* Order Denying Amazon's Motion for Judgment on the Pleadings ("MJOP Order") [Dkt. 90].  The Court observed that "[t]he substantive question of whether there is a private right of action under subsection (a)(1) of the Yelp Law is a novel issue of California law on which the California appellate courts have not yet spoken."  *Id.* at 6–7.  The Court identified the several pending state court appeals and explained that it "would not be particularly efficient for this Court to wade deep into the statutory interpretation arguments before the California appellate courts have a chance to do so."[8]  *Id.* at 7.  That observation has only grown more apt as the pending appeals have reached procedural maturity.

### B.     *Landis* Stay

Turning to the parties' arguments, the Court concludes that each *CMAX* factor favors a stay.

#### 1.     Possible Damage From a Stay

The first *CMAX* factor asks whether a stay will damage the opposing party.  *CMAX*, 300 F.2d at 268.  Amazon contends that a stay poses no meaningful risk of harm because it has already removed the non-disparagement clause from its COU and Plaintiffs do not show any fair possibility of prejudice.  Motion at 23.  Plaintiffs respond by arguing that the related Court of Appeal cases are unlikely to resolve the issues here, evidence may be lost during a stay, and Amazon's COU continues to chill consumer speech.  Opposition at 23–24.

The Court finds that a brief stay will not unduly prejudice Plaintiffs.  Plaintiffs' Yelp Law claim is built around a single contractual provision: the non-disparagement clause in Amazon's

---

[8] Plaintiffs suggest that the pending state appeals have no bearing here because, according to them, the Court acknowledged in its MJOP Order that those appeals are neither "binding [n]or precedential."  Opposition at 24.  Plaintiffs' characterization misrepresents the Court's MJOP Order.  The Court's "binding or precedential" note referred only to the trial court decisions that dismissed Yelp Law claims substantively identical to Plaintiffs' claim, not the pending appellate proceedings.  MJOP Order at 7 & n.4.

9

COU.  CAC ¶¶ 6, 29, 59–63; Joint Rule 26(f) Report at 2.  They maintain that Amazon violated the Yelp Law by including the clause in its consumer contracts, not by actually enforcing or credibly threatening to enforce the clause against any particular Plaintiff.  CAC ¶¶ 59–62.  *But cf.* CAC ¶ 6 (vaguely asserting that "threats are alleged to have been made in this case"); Opposition at 22–23 (asserting that a threat of enforcement arises from a general account-management provision in the COU that Amazon never invoked or exercised against any particular Plaintiff).  That is the core of Plaintiffs' case, and Plaintiffs' class-certification briefing puts the point beyond serious dispute.

The Class Motion frames every common question around the existence and uniformity of the challenged contractual terms.  Class Motion at 18.  It does not identify enforcement as a common issue.  *See id.*  It does not rely on enforcement to establish typicality.  *See id.* at 19.  And it defines the proposed class by reference to consumers who transacted with Amazon during a now-closed window, irrespective of any particularized enforcement or threats of enforcement.  *Id.* at 8.  At oral argument, the Court asked Plaintiffs' counsel why did they not seek to certify an enforcement class under section 1670.8(a)(2).  Counsel did not offer a satisfactory answer.  The exchange confirmed that this is a pure section 1670.8(a)(1) case.

But the non-disparagement clause is gone.  Amazon removed it from the COU on May 29, 2025.  *See* Class Motion at 13; Larson Decl. ¶¶ 5–6, 9 [Dkt. 108-26]; *see also id.* Ex. 25, at 2–3. Plaintiffs acknowledge this.  Class Motion at 8, 13.  And "to account for [the] revisions Amazon made to its COU," they propose a class period that ends on the date Amazon removed the clause.  *Id.* at 8.  Their alleged injury is entirely retrospective, fixed in time and defined by a proposed class period that has already closed.  A stay would not delay relief from a continuing wrong.  It would briefly pause litigation over a completed alleged wrong.

The forms of relief that Plaintiffs seek confirm this conclusion.  A brief delay in monetary recovery does not weigh against a stay.  *See CMAX*, 300 F.2d at 269 (noting that a delay in a party's monetary recovery did not weigh against a stay).  Injunctive relief directed at the non-disparagement clause is functionally moot, because there is no operative non-disparagement clause to enjoin.  *See* CAC ¶¶ 59–64 (alleging entitlement to injunctive relief because Amazon's non-disparagement clause restricts Plaintiffs' ability to make certain statements); *cf.* Larson Decl. Ex. 25, at 2–3

(operative COU). And any prospective public injunctive relief will depend entirely on whether section 1670.8(a)(1) authorizes a private right of action in the first place, which is the precise question before the Court of Appeal. *See Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039, 1049 (N.D. Cal. 2009) ("Injunctive relief is a remedy which must rely upon underlying claims."). Fashioning an equitable remedy before that threshold question is answered would be premature.

None of Plaintiffs' three counterarguments compels a different result.

First, Plaintiffs contend that the related Court of Appeal cases are "unlikely to resolve the issues presented in this case" because they involve different defendants, contractual provisions, and factual records. *Id.* at 23. But Plaintiffs cite no authority for the proposition that a *Landis* stay is inappropriate unless a related proceeding involves identical parties and factually indistinguishable records. *Landis* itself rejected the notion "that before proceedings in one suit may be stayed to abide the proceedings in another, the parties to the two causes must be shown to be the same and the issues identical." *Landis*, 299 U.S. at 254; *see also Leyva*, 593 F.2d at 863–64 (explaining that court's power to stay an action pending independent proceedings "does not require that the issues in such proceedings are necessarily controlling of the action before the court").

More fundamentally, Plaintiffs' distinctions make no material difference here. The *Scott* appeal, for example, presents the identical legal question before the Court in this case: whether section 1670.8(a)(1) authorizes a private right of action based solely on the inclusion of a non-disparagement clause in a consumer contract, without enforcement or threats of enforcement under section 1670.8(a)(2). First Goldmark Decl. Ex. M, at 4–5, 14–20; *see* MJOP Order at 7–8 & nn.6–7; Amazon's Opposition to Class Motion at 22–23. The non-disparagement clause the *Scott* appellants challenge is also substantively identical to the one Plaintiffs challenge here. *Compare* First Goldmark Decl. Ex. M, at 6 (asserting that ULTA's "non-disparagement provision" prohibits the use of "names and marks . . . in any manner that disparages or discredits ULTA"), *with* CAC ¶¶ 29–30 (asserting that Amazon's COU prohibits "users of [its] Platforms from mentioning Amazon or any of its trademarked brand names 'in any manner that disparages or discredits Amazon'"). Neither the name of the defendant nor the brand name in the allegedly offending clause alters the legal question

11

the Court of Appeal is poised to answer in that case. Although *Landis* counsels that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both," this case presents those circumstances. *Landis*, 299 U.S. at 255.

Second, Plaintiffs claim that evidence may be lost during a stay, pointing to Amazon's previous statements during discovery that locating certain deponents and evidence regarding the COU's drafting history proved difficult due to the passage of time. Opposition at 24. But speculation is not enough. Plaintiffs do not explain how past discovery difficulties translate into a fair possibility of harm during a brief stay. *See Doe v. Uber Techs., Inc.*, No. 19-cv-03310-JSC, 2022 WL 1489469, at *2 (N.D. Cal. May 11, 2022) (rejecting similar argument because the plaintiff "does not support this statement with any explanation of *how* she would be harmed" by a stay). Nor do they identify any witness of failing memory or advanced age, any document subject to destruction, or any source of information that a brief stay would render unavailable. *See Sanchez v. Green Messengers, Inc.*, 666 F. Supp. 3d 1047, 1053 (N.D. Cal. 2023) (declining to assume evidence would be endangered by a stay based on plaintiff's "say-so"); *Topia Tech., Inc. v. Dropbox Inc.*, No. 23-cv-00062-JSC, 2023 WL 3437823, at *7 (N.D. Cal. May 12, 2023) (finding no prejudice where nonmoving party failed to identify evidence at risk). Plaintiffs' generalized objection, understood against the backdrop of the considerable fact discovery the parties have already completed, is insufficient to show prejudice. *See PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1029 (N.D. Cal. 2014) (finding no prejudice where the parties had already "completed a substantial amount of fact discovery").

Third, Plaintiffs contend that Amazon's COU continues to chill consumers' ability to provide meaningful feedback, and that a stay would perpetuate that harm. Opposition at 24. They rely on *Lockyer* for the proposition that the first *CMAX* factor disfavors a stay where a plaintiff seeks injunctive relief. *Id.* (citing *Lockyer*, 398 F.3d at 1112).

Plaintiffs overstate *Lockyer*'s holding. A plaintiff's request for injunctive relief does not categorically insulate a case from a *Landis* stay. Were the Court to hold otherwise, the first *CMAX* factor would be rendered a nullity in any case where the complaint includes such a prayer for relief.

12

The operative inquiry under the first *CMAX* factor is whether there is a "fair possibility" that the stay will prejudice the nonmoving party, *CMAX*, 300 F.2d at 268, not whether the pleadings simply contain injunctive relief boilerplate.

Plaintiffs' reliance on *Lockyer* is also misplaced. *Lockyer* addressed circumstances in which a stay delayed adjudication of a request to enjoin "ongoing and future harm." *Lockyer*, 398 F.3d at 1112. Here, Plaintiffs have not moved for a preliminary injunction, and any request for such prospective injunctive relief is unlikely to be resolved before the Court of Appeal issues a decision in the related Yelp Law appeals. *See Gustavson v. Mars, Inc.*, No. 13-cv-04537-LHK, 2014 WL 6986421, at *3 (N.D. Cal. Dec. 10, 2014). More to the point, Plaintiffs do not identify with any specificity what "continuing harm" they seek to enjoin. *See* Opposition at 24. After all, Amazon removed the challenged non-disparagement clause well before class-certification proceedings began. *See* Class Motion at 8; Larson Decl. ¶¶ 5–6, 9; *see also id.* Ex. 25, at 2–3. Plaintiffs offer no coherent explanation of how consumers are continuously being harmed by a contractual provision that has been inoperative for nearly a year.

Under these circumstances, the first *CMAX* factor favors a stay.

### 2.    Hardship to Amazon Absent a Stay

The second *CMAX* factor asks whether the party seeking a stay will suffer hardship or inequity if required to go forward. *CMAX*, 300 F.2d at 268. Amazon contends that continuing to litigate this putative class action before the Court of Appeal decides whether section 1670.8(a)(1) even authorizes a private right of action would force the parties to expend significant resources prosecuting and defending a potentially certified class based on a legal theory that California courts may soon foreclose. Motion at 23–24. Plaintiffs respond that Amazon chose this forum, previously opposed remand, and cannot now claim hardship from the consequences of its own litigation strategy. Opposition at 25–26.

Amazon's arguments are persuasive. The hardship it identifies is not the generalized burden of defending federal litigation. It is the concrete risk of litigating a case through class certification and potentially to trial on a state-law theory that the California Court of Appeal may soon determine is unavailable.

13

That risk is particularly acute in this class-action context.  *See Mahboob v. Educ. Credit Mgmt. Corp.*, No. 15-cv-00628-TWR-AGS, 2020 WL 7625144, at *2 (S.D. Cal. Dec. 21, 2020) (explaining that hardship is "more severe when the case is a 'putative class action'" because of the high costs associated with class litigation).  Class certification carries significant litigation consequences for the parties and the Court alike.  Indeed, once a class is certified, the litigation takes on a momentum of its own, notice programs are implemented, settlement dynamics shift, and substantial judicial and party resources are expended.  If the Court were to certify a class premised on a section 1670.8(a)(1) theory, only for the Court of Appeal to later hold that no such private right of action exists, the resulting fallout would be substantial, including decertification proceedings, revised notice programs, and extensive additional motion practice.  *See Gustavson*, 2014 WL 6986421, at *3 (discussing the "significant and potentially unnecessary hardship" the defendant would suffer "if compelled to proceed" with class-action litigation during the pendency of related appellate proceedings).  A brief stay would avert that risk.

Again, the Court of Appeal's forthcoming decision is likely to provide material guidance on a host of key issues central to the claims presented here.  Proceeding now to class certification and trial preparation will require the parties to devote substantial time, money, and effort to litigating issues premised on a theory that the Court of Appeal may soon deem legally infirm.  The potential costs of unwinding an improvidently certified class under these circumstances outweigh the more modest burdens that would attend a brief, bounded stay.  Courts regularly grant stays to avoid precisely this type of waste.  *See, e.g.*, *Doe*, 2022 WL 1489469, at *2–3 (granting stay and finding hardship where proceeding with litigation would require defendant to "litigat[e] a theory of malfeasance which could be narrowed by the [California] court of appeal[]"); *In re Pac. Fertility Ctr. Litig.*, No. 18-cv-01586-JSC, 2021 WL 5283954, at *6 (N.D. Cal. Nov. 12, 2021) (collecting cases for the proposition that "courts frequently stay cases where there is a pending appeal of a parallel or related action which could be dispositive, at least in part, of the federal action").

Plaintiffs' counterarguments do not change the calculus.  They contend that Amazon cannot claim hardship because it chose to litigate in this forum and previously opposed Plaintiffs' motion to remand.  Opposition at 25.  They cite *Taylor v. Google, LLC*, No. 20-cv-07956-VKD, 2025 WL

14

3268407, at *3 (N.D. Cal. Nov. 24, 2025), for the proposition that a party forfeits the right to claim hardship from potentially duplicative litigation after choosing the federal forum. *Id.*  But *Taylor* does not stand for that broad proposition.[9]  And the *Landis* inquiry does not ask whether a party regrets its earlier forum election.  It asks whether the circumstances of and competing interests in the case favor a pause.  *See Landis*, 299 U.S. at 255–56; *CMAX*, 300 F.2d at 268.  Here, they do.

Plaintiffs also argue that "mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."  Opposition at 25 (quoting *F.T.C. v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980)).  But the concerns Amazon raises extend beyond ordinary litigation expenses incurred as a consequence of "being required to defend a suit."  *Lockyer*, 398 F.3d at 1112.  Amazon and Plaintiffs face the prospect of investing months of effort and resources in litigating a class action predicated on a legal theory that the Court of Appeal may soon reject.  Proceeding here without a clear answer on whether Plaintiffs' theory is even cognizable is not an ordinary litigation cost—it is a hardship.  *See Mahboob*, 2020 WL 7625144, at *2.

The second *CMAX* factor thus favors a stay.

### 3.    Orderly Course of Justice

The third *CMAX* factor asks whether a stay would serve the orderly course of justice by simplifying or complicating the issues, proof, or questions of law in the case.  *CMAX*, 300 F.2d at 268.  This factor weighs strongly in favor of a stay for three reasons.

First, the Court of Appeal is poised to decide the foundational legal question on which Plaintiffs' claim rests.  *See* First Goldmark Decl. Exs. L–N.  If the Court of Appeal holds that a standalone section 1670.8(a)(1) claim is not cognizable, Plaintiffs' claim may be wholly unavailable.  If it holds otherwise, the parties and the Court will benefit from that court's reasoning in resolving the outstanding issues here, including, potentially, the Article III standing question.  Either way, the Court of Appeal's decision will sharpen the contours of this litigation by simplifying the issues and questions of law the Court must resolve.  Because the "California Court of Appeal decision is

---

[9] The *Taylor* court denied a stay in part because a stay would not yield any meaningful avoidance of duplicative proceedings under the circumstances there.  *Taylor*, 2025 WL 3268407, at *3.  As discussed above and below, a stay under the circumstances here would.

'squarely on point, the orderly course of justice [under *Landis*] . . . weighs in favor of a stay." *Doe*, 2022 WL 1489469, at *3 (citation omitted).

Second, California law supplies the rule of decision in this case. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); 28 U.S.C. § 1652. Where, as here, the state supreme court has not spoken on an issue, the Ninth Circuit has made clear that federal courts are "obligated to follow the decisions of the state's intermediate appellate courts" unless there is "convincing evidence" that the state supreme court would decide differently. *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 871 (9th Cir. 2021). The Court of Appeal's forthcoming decision will thus either carry authoritative weight on the Court's analysis of Plaintiffs' claim, or at a minimum supply highly persuasive authority that the Court will consider carefully. Forging ahead with class-certification proceedings now, only for the Court of Appeal to potentially reach a decision adverse to Plaintiffs, would not serve the orderly course of justice.

Third, a stay would conserve judicial and party resources that might otherwise be expended unnecessarily. *See Gustavson*, 2014 WL 6986421, at *3 ("In determining whether the third [*CMAX*] factor weighs in favor of a stay, considerations of judicial economy are highly relevant."); *see also Leyva*, 593 F.2d at 863–64 (courts may find it "efficient" to stay a case pending independent judicial proceedings). The Class Motion alone raises complex questions of statutory interpretation, commonality, predominance, and superiority, all of which hinge in material part on whether section 1670.8(a)(1) supports a private right of action. Resolving those questions now, before the Court of Appeal weighs in, would risk producing a decision inconsistent with the state appellate court's forthcoming interpretation. Any subsequent motion practice to revisit class certification in light of that new guidance would, if adverse to Plaintiffs, impose substantial additional costs on both the parties and the Court. A brief stay averts that waste entirely.[10]

---

[10] Plaintiffs argue that the Court has an "unflagging obligation" to exercise its jurisdiction. Opposition at 26 (quoting *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002)). True. But a *Landis* stay does not contemplate the sort of complete abdication of "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them" that a *Colorado River* stay does. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Sanchez*, 666 F. Supp. 3d at 1051, 1053. A *Landis* stay is limited in duration and scope and merely postpones federal proceedings in service of narrowing factual or legal issues. *Sanchez*, 666 F. Supp. 3d at 1053 (citations omitted).

To the extent Plaintiffs suggest that the Court of Appeal may reach divergent conclusions in the various Yelp Law appeals or issue unpublished decisions that lack precedential value, Opposition at 25, those possibilities do not weigh against a *Landis* stay here. Even an unpublished decision would simplify the issues, inform the Court's analysis, and clarify the statutory landscape. *Doe*, 2022 WL 1489469. If the Court of Appeal issues a published decision, then the private-right-of-action question may be resolved authoritatively. The mere possibility of a fractured or unpublished decision is no reason for the Court to press ahead and risk issuing its own first-impression ruling in parallel with, and potentially at odds with, the very court charged with interpreting California law.

The third *CMAX* factor favors a stay.

### 4.    Balancing the *CMAX* Factors

In summary, each *CMAX* factor weighs in favor of a stay. The Court is satisfied that "it is efficient for its own docket and the fairest course for the parties to enter a stay . . . pending resolution of [the] independent [state appellate] proceedings which bear upon the case." *Leyva*, 593 F.2d at 863. The Court thus exercises its broad discretion and grants Amazon's motion to stay. This case is hereby stayed pending a decision in one or more of the pending appeals in *Scott v. Ulta Beauty, Inc.*, No. B345741 (Cal. Ct. App.), *Arterberry v. Peet's Coffee, Inc.*, No. B344295 (Cal. Ct. App.), *Moss v. GoDaddy.com, LLC*, No. B346188 (Cal. Ct. App.), *Anderson v. United Parcel Serv. of Am.*, No. B350215 (Cal. Ct. App.), or *Khosrovian v. Home Depot, Inc.*, No. B349592 (Cal. Ct. App).

### C.    Motion to Remand

Amazon's remand motion raises close and consequential questions concerning whether Plaintiffs adequately demonstrate that they suffered a concrete and particularized Article III injury. Because the Court grants Amazon's stay request, it need not resolve the standing question at this time. That determination will be made, if necessary, once the stay is lifted.

The stay preserves the status quo while the Court of Appeal clarifies the statutory foundation on which Plaintiffs' claim rests. If that clarification forecloses Plaintiffs' theory, the standing question may become academic. If it confirms their theory, the Court will be better positioned to decide the standing question. The Court thus denies Amazon's motion to remand.

## V.    CONCLUSION

For the reasons discussed above, the Court grants Amazon's motion to stay and denies its motion to remand without prejudice to renewal.  The case is hereby stayed in its entirety pending the California Court of Appeal's issuance of a decision resolving whether California Civil Code section 1670.8(a)(1) authorizes a private right of action absent enforcement or threatened enforcement under section 1670.8(a)(2).

The parties shall file a joint status report every ninety days from the date of this Order apprising the Court of the status of each of the relevant state appellate proceedings.  Within ten days of the issuance of a decision on the merits in any of the relevant state appellate proceedings, the parties shall file a joint status report advising the Court of the decision and its bearing on Plaintiffs' claim and this case.  At that juncture, the Court will either lift the stay, continue the stay pending disposition of any remaining appeals, or solicit further briefing from the parties.

Dated: April 17, 2026

_____
Hernán D. Vera
United States District Judge

18